IN OPEN COURT

NOV 15 2007

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:07cr464 |
| ) | |
| ) | Count 1: 18 U.S.C. § 371 |
| BARRY E. GITARTS, ) | (Conspiracy) |
| ) | |
| Defendant ) | |

**INDICTMENT**

November 2007 Term at Alexandria, Virginia

Count One

(Conspiracy)

THE GRAND JURY CHARGES THAT:

I. Introduction

1. During its existence from 1997 until 2004, "Apocalypse Production Crew" (a/k/a "aPC") was an Internet music piracy group.

2. The Apocalypse Production Crew was responsible for unlawfully reproducing and distributing thousands of copyrighted songs over the Internet. These reproductions were done for the benefit of the members of aPC and other affiliated piracy groups, in that, by getting a reputation for providing pirated materials that were previously unavailable on the piracy scene, aPC members were granted access to massive libraries of pirated music, video games, software, and movies.

3. In addition to being a piracy group, aPC was a "pre-release group;" that is, the group was often the original source or

"first-provider" for the pirated works on the Internet. Members of aPC sought to acquire digital copies of songs and albums before their commercial release in the United States. The supply of pre-release music was often provided by music industry insiders, such as radio DJs, employees of music magazine publishers, or workers at compact disc manufacturing plants and retailers, who frequently receive advance copies of music prior to its commercial release.

4. Once aPC had prepared a stolen digital work for distribution, the material was distributed in minutes to secure computer servers throughout the world. From there, often within a matter of hours, the pirated works were distributed globally, filtering down to peer-to-peer and other public file sharing networks accessible to anyone with Internet access and potentially appearing for sale around the world.

II. The Conspiracy and its Object

5. From at least June 2003 and continuing until approximately June 2004, in the Eastern District of Virginia and elsewhere, BARRY GITARTS, also known as "DEXTRO," defendant herein, conspired and agreed to willfully infringe copyrights with others known and unknown to the government, including but not limited to Mark Shumaker, also known by his screen nickname "MARKALSO"; that is, during a 180-day period, defendant did conspire and agree to reproduce and distribute at least ten infringing copies of one or more copyrighted works, with a total retail value of more than $2,500, for purposes of private financial gain, in violation of

Title 17, United States Code, Section 506(a)(1) and Title 18, United States Code, Section 2319(b)(1).

III. <u>Way, Manner, and Means of the Conspiracy</u>

6. It was part of the conspiracy that the defendant and other members of the Internet music piracy group known as "Apocalypse Production Crew" would obtain, rip (*i.e.*, convert to computer format), and distribute copyrighted music files to group-affiliated Internet file storage sites (a/k/a "FTP Sites") throughout the world.

7. It was further part of the conspiracy that certain members of the conspiracy would operate and maintain group-controlled FTP sites containing thousands of unauthorized copies of copyrighted works, including software, games, movies, and music, for the reward and benefit of group members and others.

8. It was further part of the conspiracy that the defendant did pay for and administer a computer server located in Houston, Texas to store hundreds of unauthorized copies of copyrighted works, including software, games, movies, and music, for distribution to other aPC group members and others as a reward and benefit for providing other pirated works.

9. It was further part of the conspiracy that the defendant received a Paypal payment from the leader of aPC for $130 on or about June 25, 2003.

10. It was further part of the conspiracy that the defendant lied to Special Agents of the Federal Bureau of Investigation ("FBI") by denying any knowledge of aPC or the screenname

3

"Dextro" on April 22, 2004.

11. In furtherance of the conspiracy, after being confronted by the FBI on April 22, 2004, the defendant destroyed the evidence of his involvement in aPC that was contained on a particular computer in his residence.

12. On June 4, 2004, the defendant, continuing to further the conspiracy, again lied to FBI agents when they arrived to search his residence by denying any knowledge of aPC or the screenname "Dextro." When confronted with notes recovered from his residence that bore the name "Dextro," the defendant finally admitted to being a member of aPC and being "Dextro." At that time, however, the defendant told the FBI agents that a particular computer in his residence would contain all files related to aPC, including downloaded pirated works, despite the fact that he had already deleted these files on or about April 22, 2004.

## Overt Act

13. It was further part of the conspiracy that the following act in furtherance of and to effect the objects of the above-described conspiracy was committed in the Eastern District of Virginia, and elsewhere:

a. Mark Shumaker, the leader of aPC for some part of the conspiracy, used his access to the Fatal Error computer server, located at the computer facilities of an Internet Service Provider in the Eastern District of Virginia (specifically Dulles, Virginia) between on or about March 3, 2001 until on or

4

about October 25, 2001, to reward members of aPC with infringed copyrighted works for their involvement in aPC.

b.  On or about June 15, 2003, aPC member "Movieman", utilizing an Internet connection in Dale City, Virginia (which is located in the Eastern District of Virginia), downloaded a copyrighted work from the computer server paid for and administered by the defendant in Houston, Texas.

c.  On or about June 25, 2003, the leader of aPC sent a payment to the defendant by means of Paypal, which the leader of aPC accessed using an Internet connection (provided by AOL), which was located in the Eastern District of Virginia.

d.  On or about April 22, 2004, the defendant knowingly erased files on his computer in Brooklyn, New York which he later admitted to FBI agents contained pirated files related to aPC.

(All in violation of Title 18, United States Code, Section 371).

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.
FOREPERSON OF THE GRAND JURY

DATE: November    , 2007

CHUCK ROSENBERG
United States Attorney

_____
Jay V. Prabhu
Assistant United States Attorney

_____
Tyler Newby
Special Assistant United States Attorney