IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 1:07CR464 |
| v. ) | |
| ) | Hon. Liam O'Grady |
| BARRY E. GITARTS, ) | |
| ) | Sentencing Date: August 8, 2008 |
| Defendant. ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING FACTORS**

COMES NOW, the United States of America, through its attorneys, Chuck Rosenberg, United States Attorney, and Jay V. Prabhu, Assistant United States Attorney, in accord with the local rules, 18 U.S.C. § 3553(a), and the United States Sentencing Commission, *Guidelines Manual,* §2B5.3 (Nov. 2004), files this Position of the United States with Respect to the Sentencing Factors in the case of BARRY E. GITARTS (1:07cr464).

The government submits that the Presentence Report properly calculates the Defendant's advisory Sentencing Guidelines range as 51-60 months and respectfully suggests to the Court that a sentence within the advisory Sentencing Guidelines range would be appropriate in this case.

**I.    BACKGROUND**

On June 22, 2008, following a two day trial, a jury convicted the Defendant of the sole count of an indictment for conspiracy to commit copyright infringement, in violation of Title 18, United States Code, Section 371.

As set forth in the Presentence Report, and as the evidence showed at trial, the Defendant was an important member of an Internet pre-release music piracy group known as "Apocalypse

Production Crew" or "aPC." The evidence showed beyond a reasonable doubt that the Defendant willfully entered into an agreement with one or more individuals for the express purpose of unlawfully reproducing and distributing copyrighted materials via the Internet.

The evidence established that aPC's members, including the Defendant, knew that the purpose of the group was to copy and distribute pirated copies of sound recordings among other members of the group. The Court will recall the testimony of Jacob Stahler, a member of aPC, who described the operations of the group, including its use of a high-speed computer server, known as its headquarters server, to store and distribute pirated music. The evidence presented at trial, including account-holder records obtained from the Houston, Texas server hosting company in which aPC's headquarters server was located, showed that Defendant paid for and operated aPC's headquarters server. The evidence recovered from that server showed that it contained thousands of copies of pirated movies, sound recordings and software programs, and had been used to distribute tens of thousands of pirated works.

The evidence presented at trial also established Defendant's efforts to obstruct justice in this case. FBI Special Agent Anthony Rausa testified about the Defendant's false statement to him and former Special Agent Laura Lyons the day after the Texas server had been seized by law enforcement. At that meeting, the Defendant denied any involvement in aPC, denied knowing the name Dextro, and denied that he was involved in music piracy. Defendant again lied to law enforcement agents when they arrived at his home to execute a search warrant in June of 2004. FBI Special Agent Greg Frankhouser testified that, though the Defendant denied any involvement at first, he admitted to being in aPC after a cassette tape was recovered from his room with the name "DEXTRO" – his aPC alias – on it. In addition, the government's computer

forensic expert, FBI Special Agent Amanda Rankhorn, testified that she determined that the computer hard drive recovered from Defendant's residence had been overwritten on the morning of April 22, 2004 – the morning after a nationwide takedown of aPC – but that remnants of information tying the Defendant to aPC remained on the drive.

The evidence also showed that Defendant ultimately admitted his involvement in aPC after his initial denials. After initially claiming no knowledge of "DEXTRO" during a consensual interview with law enforcement agents during the search of his home, Defendant admitted to being Dextro; admitted to being involved in aPC; admitted to being solely responsible for operating the aPC headquarters server remotely from his home in Brooklyn; and admitted to having discussions with Paul Davis, the head of aPC. The Defendant's friend Robert Galapo further testified that the Defendant came to his house and enabled his computer to download movies, music, and software.

## II.   SENTENCING GUIDELINES CALCULATION

Based on this record, the Presentence Report properly calculated that the Adjusted Offense Level for the defendant's conduct was 24: Sentencing Guideline 2B5.3(a) provides for an offense level of 8 for criminal copyright infringement; Guideline 2B5.3(b)(1)(B) provides an additional twelve-level upward adjustment for an offense with an infringement amount greater than $275,000, but less than $400,000; Guideline 2B5.3(b)(3) provides an additional two-level upward adjustment for an offense involving the uploading of infringed items; and Guideline 3C1.1 provides for an additional two-level upward adjustment for obstructing or impeding the administration of justice. The Defendant, therefore, has an Offense Level Total of 24. The Presentence Report further calculates that the Defendant has a Criminal History Category of I.

With an Offense Level Total of 24 and the Defendant's Criminal History Category of I, the advisory Sentencing Guidelines range for the Defendant is properly calculated as 51-60 months.

     Two items discussed within this calculation deserve some additional clarification. First, the valuation of the infringement was found by the probation officer to be more than $275,000 but less than $400,000. When the server was first analyzed by the FBI, a quick summary of the titles transferred onto the server was reviewed and a rough valuation of approximately $55,000 was noted. The other thirteen aPC defendants in this District have all pled guilty to that valuation. Since the Defendant chose to go to trial, additional work was completed to determine the full retail value of the copyrighted material that passed through his server, rather than the quick valuation done for the purposes of the pleas. As reflected in the PSR in paragraph 34, the full retail value of the copyrighted materials located on the server was approximately $98,723.36. Factoring the number of times copyrighted materials with known retail values were distributed results in an additional infringement amount of $275,322.49. The remaining items (without established retail values) multiplied times an average per-unit retail value results in an additional $214,730. As such, despite this total of just over $490,000, the probation officer has chosen to be very conservative and value the amount of loss at between $275,000 and $400,000. The government believes that such a valuation is an absolute floor for the loss attributable to the Defendant.

     Second, the probation officer has proposed a two-level upward adjustment for obstructing or impeding the administration of justice under USSG § 3C1.1. As discussed in Paragraph 42 of the Presentence Report, the Defendant lied to federal investigators twice and attempted to delete information on his computer the day after a massive international takedown of piracy groups was

initiated. In the Application Notes of USSG Section 3C1.1, notes 4(d) (destroying evidence) and 4(g) (providing a materially false statement to law enforcement) reflect exactly the actions by the Defendant that were demonstrated at trial. As such, the two point enhancement is appropriate.

In sum, the government believes that the advisory Sentencing Guidelines range for the Defendant is properly calculated as 51-60 months.

**III.   ARGUMENT**

   A.   <u>Applicable Legal Standards.</u>

The Supreme Court has declared that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 128 S. Ct. 586, 596 (2007). The Sentencing Guidelines, therefore, remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

    B.    <u>A Sentence Within the Sentencing Guidelines Would Be Reasonable and Appropriate in Light of Recent Supreme Court Rulings.</u>

The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," <u>Kimbrough v. United States</u>, 128 S. Ct. 558, 574 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" <u>id.</u> at 574 (quoting <u>United States v. Pruitt</u>, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court recently stated that "[w]e have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." <u>Kimbrough</u>, 128 S. Ct. at 574 (quoting <u>Rita v. United States</u>, 127 S. Ct. 2456, 2465 (2007)).

The advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the

6

disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 128 S. Ct. at 596 n.6. Thus, the Gall Court instructed:

> It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.

Gall, 128 S. Ct. at 594. [1]

Likewise, the Court's decision in Kimbrough, issued on the same day as Gall, emphasized the district courts' responsibility to consider the Sentencing Guidelines as a bulwark against disparate sentencing. Responding to an assertion that case-by-case assessment of the propriety of the guidelines may lead to significant disparity in sentencing, the Court emphasized the district courts' responsibility to avoid that result:

> Section 3553(a)(6) directs *district courts* to consider the need to avoid unwarranted disparities — along with other § 3553(a) factors — when imposing sentences. See *Gall, ante* . . . .

Kimbrough, 128 S. Ct. at 574 (emphasis in original).

Further, Kimbrough did not encourage wholesale abandonment of guideline sentencing. To the contrary, Kimbrough narrowly focused on sentencing for crack cocaine offenses. With

---

[1] The Court added: "If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." Id. at 597.

respect to those offenses alone, the Court suggested that the guidelines are not entitled to the ordinary respect given to the Sentencing Guidelines on the basis of the care and study put into them, given that the Sentencing Commission itself has condemned its own guidelines in this area.  Regarding any other offenses, the Supreme Court suggested that rejection of the suggested guidelines based only on an individual judge's disagreement with the formulation of the guidelines may not fare well on appeal, stating: "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect §3553(a) considerations' even in a mine-run case." Id. at 575  (quoting Rita, 127 S. Ct. at 2465).  These statements reflect the fact that, ordinarily, the Sentencing Guidelines reflect the distillation of national sentencing experience and provide a useful measure for determining appropriate and consistent punishments.

For all of these reasons, the advisory guideline range deserves significant respect.  To be clear, the government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness.  However, a district court must consider the guideline range, see § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders.

    C.    A Sentence within the Guidelines Range Is Appropriate And Reasonable In Light Of the Serious Nature Of Defendant's Criminal Conduct (18 U.S.C. § 3553(a)(1) & (2)(A)).

Defendant's conduct is particularly worthy of significant punishment because of its ongoing, expansive nature.  Defendant belonged to a conspiracy that sought to rip and steal every

new song it could get its hands on.  The conspiracy was open-ended: the group did not stop until after the FBI shut down the aPC headquarters server operated by Defendant.  This ongoing conduct was not the result of a momentary lapse in judgment or a simple mistake.  To the contrary, it shows a concerted course of action by Defendant.  A sentence of imprisonment is therefore required to  "promote respect for the law," 18 U.S.C. § 3553(a)(2)(A).

      Defendant's crime is particularly worthy of severe punishment because it involved the creation and maintenance of an infrastructure of crime.  Like every aPC member, Defendant deserves to be punished for illegally infringing copyrights.  But Defendant was not a minor participant in the conspiracy.  He operated the server.  That server was crucial infrastructure, without which aPC could not exist.  Defendant not only stole music himself, but enabled many others to steal it as well.  This compounded Defendant's criminality, making him culpable for the harm caused by all of the users of the server he ran.  The unusually involved "nature and circumstances" of this crime thus places the defendant in the category of criminal most deserving of prison.  18 U.S.C. § 3553(a)(1)

      Given the nature of the defendant's criminal conduct and the impact and the harm to the public, the United States believes that a significant sentence of incarceration within the range of the Sentencing Guidelines would account reasonably for the seriousness of his crimes and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

    D.    <u>A Sentence within the Guidelines Range Is Necessary for Both General and Specific Deterrence  (18 U.S.C. § 3553(a)(2)(B) & (C))</u>.

      The defendant has not shown any remorse for his conduct.  In fact, he has followed his counsel's advice not to discuss the case with probation.  <u>See</u> PSR ¶ 43.  This lack of remorse suggests Defendant has not yet come to regret his actions.  Deterring the defendant from

9

committing similar crimes in the future, then, requires that the Defendant pay a significant price for his crimes. It is the government's position that a significant period of incarceration is much more likely to deter the defendant from further criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(C).

This case also provides a significant opportunity for general deterrence. As the defendant's conduct has shown, the opportunity to commit piracy on a massive and multinational scale is significant. Pirates in the Internet age may feel that the relative difficulty in investigating online crimes will protect them from ever having to face justice. The sentence of the Court will be a significant message to others who might emulate the defendant's criminal conduct, and a significant departure would certainly harm general deterrence.

There can be no question that the Defendant engaged in serious crimes that harmed individuals and businesses; in fact, the total infringement amount attributable to the conspiracy of which the Defendant was a member is over $275,000. Given the nature of the Defendant's criminal conduct and the impact and the harm to the public, the United States believes that an appropriate sentence would fall within the advisory Sentencing Guidelines.

E. The Defendant's Sentence Should Be Significantly Longer than Any of the Previously Convicted Defendants (18 U.S.C. § 3553(a)(6))

A number of other co-conspirators from aPC have been sentenced in this courthouse after pleading guilty. These sentences have ranged from a split sentence of six months in prison/six months of home confinement to probationary sentences with community service for cooperators. Defendant, however, is different in three important ways.

First, Defendant ran the server. He made the group's piracy operations possible. Therefore, it is appropriate that he be assigned the significantly higher valuation that was

completed for trial (over $275,000), rather than the pre-trial valuation that was agreed upon with the other members' of aPC (less than $70,000). The Defendant's sentence should reflect the higher amount of damage he caused. The Guidelines sentence reflects this appropriately; its use of the 2B1.1 table reflects a judgment that intellectual property crimes are analogous to theft or fraud, and should be punished equivalently. *See* U.S.S.G. 2B5.3 (background note).

Second, Defendant is the only member of the group who chose to take his case to trial; such decisions should have consequences. If defendants who waive their right to trial were to receive the same sentence as defendants who insist on a trial, then there would be little incentive to plea bargain. The Guidelines' Acceptance of Responsibility provisions adequately take this consideration into account.

Third, Defendant was the only member of the group to lie to law enforcement about his involvement and attempt to destroy evidence of his involvement. His attempt to erase his hard drive, though not entirely successful, nonetheless significantly impeded the administration of justice. Examining the gigabytes of free space left behind presented a challenge that required a significant amount of government resources.

Finally, the goal of avoiding "unwarranted sentence disparities" cited in 18 U.S.C. § 3553(a)(6) is advanced by adherence to the guidelines. Even in the post-Booker era, the "advisory Guidelines combined with appellate review for reasonableness and ongoing revision of the Guidelines in response to sentencing practices will help to avoid excessive sentencing disparities." Kimbrough v. United States, 128 S.Ct. 558, 573-74 (2007).

IV.   **CONCLUSION**

For the reasons set forth above, the United States requests that the Court impose a

sentence within the advisory Sentencing Guidelines of 51-60 months of incarceration, plus three years of supervised release.

        Respectfully submitted,

        Chuck Rosenberg
        United States Attorney

By:     /s/
        Jay V. Prabhu
        Attorney for United States
        U.S. Attorney's Office
        Justin W. Williams U.S. Attorney's Building
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone: 703-299-3700
        FAX: 703-299-3982
        Email Address: jay.prabhu@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on the 21st day of July, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to the following:

      Jon L. Katz, Esq.
      1400 Spring Street, Suite 410
      Silver Spring, Maryland 20910
      (301) 495-4300
      (301) 495-8815 (fax)

      jon@markskatz.com

      *Counsel for Barry E. Gitarts*

                    /s/
                  Jay V. Prabhu
                  Attorney for United States
                  U.S. Attorney's Office
                  Justin W. Williams U.S. Attorney's Building
                  2100 Jamieson Avenue
                  Alexandria, Virginia 22314
                  Phone: 703-299-3700
                  FAX: 703-299-3981
                  Email Address: jay.prabhu@usdoj.gov